UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MEGHAN G.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. C25-5044-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating her symptom testimony, the lay witness evidence, the medical opinion evidence, and argues the proper remedy is remand for benefits. (Dkt. # 13.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 17.) Plaintiff did not file a reply. Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court REVERSES the Commissioner's final

ORDER - 1

decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).[1]

## II.   BACKGROUND

Plaintiff was born in April 1986, has a high school education, and has no past relevant work. AR at 1031. Plaintiff has not engaged in substantial gainful activity since July 2019. *Id.* at 1022.

In July 2019, Plaintiff applied for benefits, alleging disability as of July 2019. AR at 1020. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 80. After the ALJ conducted a hearing in June 8, 2021, the ALJ issued a decision finding Plaintiff not disabled. *Id.* Plaintiff appealed that decision to this Court, which remanded for further administrative proceedings. *Id.* at 1145. The same ALJ conducted a second hearing on September 3, 2024, and again found Plaintiff not disabled. *Id.* at 1020.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, Plaintiff had the severe impairments of irritable bowel syndrome ("IBS"), left sacroiliac joint dysfunction status post-surgery, right sacroiliac joint degenerative disease with dysfunction, degenerative disc disease of the cervical spine, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), borderline personality disorder, major depressive disorder, and autism spectrum disorder. AR at 1022. She has the residual functional capacity ("RFC") to perform light work, with some exertional limitations to climbing and crawling, limited to non-complex instructions and predictable tasks with only occasional interaction with coworkers and supervisors, no interaction with the public, and requires ready access to bathroom facilities. *Id.* at

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

[2] 20 C.F.R. § 416.920.

1026. Finding Plaintiff could perform jobs available in significant numbers in the national economy, the ALJ concluded she was not disabled. *Id.* at 1031-32.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III.  LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

ORDER - 3

# IV. DISCUSSION

## A. The ALJ Did Not Err in Evaluating Medical Evidence

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 416.920c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

### 1. Jan Lewis, Ph.D., and Vincent Gollogly, Ph.D.

The ALJ considered the opinions of state DDS psychiatrists Drs. Lewis and Gollogly as one and found them persuasive. AR at 1030. Plaintiff argues the ALJ erred in his analysis of the non-examining state agency consultants because they did not examine Plaintiff, and their opinion exceeded their expertise. (Dkt. # 13 at 16-17.) The Commissioner argues the ALJ reasonably weighed the supportability and consistency factors in determining the opinions of Drs. Lewis and Gollogly were persuasive. (Dkt. # 17 at 10-11.)

As Plaintiff filed this case after 2017, the updated regulations apply and the ALJ was not required to give more weight to a treating or examining opinion. *Woods*, 32 F.4th at 792. Moreover, an ALJ is not required to provide reasons for accepting medical opinion evidence. *See Sanchez v. Saul*, 814 F. App'x 271, 273 (9th Cir. 2020) (citing 20 C.F.R. § 416.927; SSR 96-6p, 1996 SSR LEXIS 3; *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)). The ALJ found that the DDS opinions were both supported and consistent with the record. AR at 1030. It was reasonable of the ALJ to find these opinions persuasive.

### 2. Justin Stamschror, M.D.

The ALJ considered the opinion of Dr. Stamschror and discounted it as vague, unsupported, and inconsistent with the overall record. AR at 1031. Plaintiff argues the ALJ erred

ORDER - 4

in discounting the opinion of Dr. Stamschror because if the ALJ found the opinion to be vague he had a duty to further develop the record and request clarification rather than rejecting the opinion. (Dkt. # 13 at 17.) The Commissioner argues there was no ambiguity or inadequacy in the record that would trigger the ALJ's duty to further develop the record. (Dkt. # 17 at 11-12 (citing *Ford*, 950 F.3d at 1156).)

Plaintiff does not challenge the ALJ's supportability or consistency findings, either of which would be sufficient on its own to support his findings regarding Dr. Stamschror's opinion. *See Woods*, 32 F.4th at 792-94 & n.4. Further, an "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford*, 950 F.3d at 1156 (cleaned up). The record contains over three thousand pages of medical records. AR at 401-1016, 1451-4423. The ALJ reviewed nine medical opinions. *Id.* at 1030-31. Nothing in the record indicates ambiguity or inadequacy. Plaintiff has not shown the ALJ erred in discounting the opinion of Dr. Stamschror.

### B. The ALJ Erred in Evaluating the Testimonial Evidence

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

The ALJ considered Plaintiff's subjective symptom testimony and discounted it as inconsistent with the objective medical evidence and Plaintiff's activities of daily living. AR at 1028-29. Plaintiff argues the ALJ failed to provide clear and convincing reasons to discount

ORDER - 5

1 | Plaintiff's testimony. (Dkt. # 13 at 3.) The Commissioner argues the ALJ properly rejected
2 | Plaintiff's more severe allegations because they conflicted with the objective medical evidence
3 | and her activities. (Dkt. # 17 at 3.)
4 |     At the second hearing Plaintiff testified that her PTSD symptoms had worsened since
5 | leaving her fiancé because of domestic violence. AR at 1061. While she was able to move in
6 | with her parents, she finds living with them triggers her PTSD symptoms as she suffered
7 | childhood abuse and trauma. *Id.* at 1069-70. She has attended therapy since the age of 11 but is
8 | not sure if counseling helps. *Id.* at 1071. Her symptoms have "gone up and down," but overall
9 | feels they have remained the same since her first hearing because "[w]hen you're at rock bottom,
10 | I don't know how you get worse." *Id.* at 1972.
11 |     Prior to her back surgery she "was barely able to stand[,]" but the spinal fusion helped
12 | with the pain in that portion of her back. AR at 1073. She has been able to access better medical
13 | care since moving, but it has not meaningfully improved her conditions. *Id.* at 1062-63. She has
14 | exocrine pancreatic insufficiency, which cannot be treated and requires her to eat a very strict
15 | diet which makes eating difficult. *Id.* at 1064-66. She has the help of her sister, nephew, and
16 | caregiver with daily activities and watching her children. *Id.* at 1067-68, 1074. She struggles
17 | with driving due to syncope, anxiety, and claustrophobia. *Id.* at 1075.
18 |     On a typical day she struggles to sleep because of anxiety. AR at 1077. After waking she
19 | makes a bowl of cereal for her youngest child and makes sure he gets to the bus stop. *Id.* She
20 | then takes a nap because the morning routine leaves her exhausted. *Id.* She has coffee and a
21 | protein shake for breakfast because that is all her stomach can handle. *Id.* at 1078. If her stomach
22 | becomes upset and spasms after breakfast it can cause ribs to "pop" due to her Ehlers-Danlos
23 | Syndrome. *Id.* at 1078-79. Getting into the car causes her pain, so when she is in the car she says

1  "I have to put my seat back, and I curl up into a ball. I just close my eyes, and I wait until I'm
2  there." *Id.* at 1079. On days she has an appointment she starts getting ready approximately five
3  hours before to make sure that she takes her medications. *Id.* at 1077-78. She struggles talking to
4  people, and says after an interaction "I'll be shaking, and I'll be having like an adrenaline rush
5  from just like having to talk to people." *Id.* at 1093-93. Usually by dinner she is so tired she is
6  "falling asleep in [her] food." *Id.* at 1081. She will sometimes fall asleep at the table or on the
7  ground, which exacerbates the swelling in her legs. *Id.* at 1082.

8        Plaintiff argues that the ALJ failed to create a "logical bridge" between the portions of
9  Plaintiff's testimony he discounted and the evidence. (Dkt. # 13 at 5 (citing *Blakes v. Barnhart*,
10 331 F.3d 565, 569 (7th Cir. 2003)).) Plaintiff argues the ALJ erred in discounting her testimony
11 that she could only sit for 30 minutes, stand, or walk for 20 minutes, and that she needed to lay
12 down throughout the day. (*Id.* at 3-4.) The Court agrees that the ALJ clearly erred in his analysis
13 of Plaintiff's subjective complaints.

14       The ALJ discounted Plaintiff's physical limitations based on appointments showing
15 normal range of motion, normal lower extremity strength, and normal gait. AR at 1028 (citing *id.*
16 at 567 ("Moving through full [range of motion] without difficulty" at an ER visit for flank pain),
17 609 (showing normal extremities at an appointment to address abdominal pain), 844 ("GAIT:
18 Normal" at a neurological consult); 993 ("Gait: Normal" at a psychiatric evaluation), 2101
19 (showing no edema in extremities), 2302-05 ("Motor: Normal bulk, tone and contour with 5/5
20 power in all major muscle groups . . . [Plaintiff] is effectively not weightbearing on [left lower
21 extremity]"), 3736 (exam showing range of motion within normal limits but difficulty with
22 lifting and carrying)).

23

While the ALJ acknowledged the abnormal findings in the record, he failed to explain why he found the abnormal findings less persuasive than the normal ones. *See Alexander M. v. Comm'r of Soc. Sec.*, 2021 WL 3758145, at *3 (W.D. Wash. Aug. 25, 2021) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)) ("merely listing the normal and abnormal findings does not explain why the ALJ considered the normal results more significant"). Further, the ALJ seemingly reviewed exam findings without considering the appointment notes or context of the appointment. For example, it is unclear why normal gait notated at a psychiatric evaluation, AR at 993, would be more persuasive than her primary care and physical therapy providers' repeated observations of abnormal gait findings.[3] The ALJ similarly weighed normal range of motion and strength findings more heavily than the abnormal findings without explanation. *Id.* at 1028.

Plaintiff further argues that the ALJ erred in rejecting her testimony of syncope, dizziness, lightheadedness, migraines, and gastrointestinal symptoms. (Dkt. # 13 at 7.) At step two the ALJ found that Plaintiff's gastroesophageal reflux disease, migraines, vasovagal syncope, small intestinal bacterial overgrowth, celiac disease, vaginitis, overactive bladder, and bladder wall thickening were non-severe impairments. AR at 1023. But even when an impairment does not significantly limit a claimant's ability to do basic work activity, an ALJ must consider all limitations caused by the impairments. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing SSR 96-8p (1996)).

---

[3] AR 1510 ("Gait: very slow, antalgic [left lower extremity], stiff with very poor thoracic rotation, requires assistance on walls due to pain and weakness"), 1699 ("Gait abnormalities"), 2169 ("mildly antalgic gait"), 2191 ("antalgic gait"), 2318 ("[Plaintiff] able to amb[ulate] approx. 75 ft with [front-wheeled walker], but limite[d] weight bearing left [lower extremity] due to pain. Able to climb 11 steps with rails and Supervision. Limited tolerance for sitting on bed or chair. Limits weight bearing left hip."), 2321 ("Gait/Mobility Level of Independence: supervised"), 2627 ("interventions will be initiated based on deficits found with: Gait/strength/balance"), 2998 ("Gait/Mobility Level of Independence: supervised"), 3798 ("poor balance, unsteady gait"), 3838 (same), 3868 (same), 3897 (same), 3931 (same), 3965 (same), 4082 ("mildly antalgic gait"), 4104 ("antalgic gait . . . stability test negative but elicits pain.").

While the ALJ accommodated Plaintiff's GI symptoms by requiring ready access to bathroom facilities, AR at 1028, he did not meaningfully address Plaintiff's subjective complaints regarding her syncope, dizziness, lightheadedness, and migraines. At step two the ALJ found, without reasoning or citation, that these symptoms "have caused only transient, mild symptoms or limitations; are well-controlled with treatment; and/or have not persisted for a continuous 12 months." *Id.* at 1023. The ALJ did not addressed these impairments at Step Four. The Commissioner argues the record contradicts Plaintiff's migraine complaints. (Dkt. # 17 at 4.) But the Court is required to review "the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009). The ALJ erred in failing to account for these non-severe impairments in the RFC.

Plaintiff further argues the ALJ erred in discounting her PTSD and anxiety symptoms. (Dkt. # 13 at 9.) The ALJ discounted Plaintiff's mental health symptoms because of normal mental examinations. AR at 1029 (citing *id.* at 405, 609, 844-45, 861, 993, 2101, 2193, 2422-23). The ALJ once again acknowledged the abnormal findings but failed to explain why they were less persuasive than the normal findings. Furthermore, the portions of the record cited by the ALJ do not support the finding that Plaintiff "had numerous normal mental examinations." *Id.* at 1029. The ALJ cites only one full mental status exam, at an appointment to establish primary care, which shows all normal findings. *Id.* at 2101 (Mood, behavior, thought content, and judgment all "normal."). At an additional exam for abdominal pain, the provider noted "Psychiatric exam: Present: normal affect," though the exam focused on her gastrointestinal

problems. *Id.* at 609. Otherwise, all the cited exams show at least one abnormal psychological finding in addition to some normal findings.[4]

The ALJ further discounted Plaintiff's symptoms based on her activities of daily living. AR at 1029. He specifically pointed to evidence she "is still able to prepare her own meals, perform light cleaning, shop for herself in stores, and spends time with others in person." *Id.* (citing *id.* at 1393-1402). While contradiction between activities and testimony is a reasonable basis to reject the testimony, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citations omitted). The record indicates that Plaintiff can make simple meals for herself and kids, but otherwise has the help of a caregiver. AR at 1395. While she can do light chores, she "need[s] to piece apart chores to do over time" and requires help to complete her housework. *Id.* at 1395. While she does shop in person, Plaintiff primarily shops online including ordering her groceries. *Id.* at 1395-96. She spends time with her sister and friends primarily through Zoom and texting and has "only been able to see [them] in person a few times." *Id.* at

---

[4] AR 405 (showing intact memory, concentration, and insight but elevated psychomotor activity, depressed and anxious mood), 844-45 (Neurological exam noting "She has suicide thoughts, but no concrete plan. . . . [n]ormal recent and remote memory. Normal attention and concentration. . . . The patient should follow up with her mental health professionals for her significant psychological mobility."), 861 ("reports waking up in a panic. Encouraged her to keep trying to get more sleep . . . Mood/Affect: Labile . . . Insight: adequate; Judgement: Adequate; Memory: Within normal limits"), 993 ("speech PRESSURED, broad vocabulary, normal range of Inflections; VERBOSE . . . thought process: Logical, no perseveration . . . Thinking style: abstract . . . Orientation: Alert and oriented to person, place, and time, Mood/Affect: Anxious . . . Attention/Concentration: poor but is easily and frequently redirected, Judgment: fair to good"), 2193 (appointment to discuss menstrual concerns "Mood and affect are congruent and appropriate for situation. Speech is rapid and highly tangential. Memory appears intact. Thought content is normal. Behavior is appropriate."), 2422-23 ("The claimant's attention was adequate for exam. . . . Treatment may be limited by low insight, physical conditions that worsen the claimant's mood, and the inherent difficulty in treating borderline personality disorder, which can take several years.")

ORDER - 10

1397. None of these activities contradict Plaintiff's testimony, in which she indicated that she struggles with these activities, not that she was incapable of them. *See id.* at 1062-95.

Consequently, the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony. For similar reasons, the ALJ erred in dismissing the third-party reports of Plaintiff's family, K.T., N.T., and B.T. Although the ALJ briefly considered this evidence, he ultimately concluded that their statements were consistent with Plaintiff's allegations but inconsistent with "multiple normal mental and physical examinations." AR at 1031. As discussed above, this reasoning was flawed. As the statements in this case are substantially similar to Plaintiff's testimony, on remand the ALJ should also reevaluate the third-party reports. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

**C.     Remand**

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). To determine whether such an award is appropriate, the Court applies a three-step framework. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler*, 775 F.3d at 1101 (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even if the Court concludes all three steps are satisfied, "it is within the court's discretion either

ORDER - 11

to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

Here, outstanding issues remain for the ALJ to resolve. Even if this Court credited Plaintiff's testimony as true, an ALJ needs to interpret her alleged limitations into an RFC. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). Further, the medical opinions which the ALJ accepted contradict a finding of disability.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings. On remand, the ALJ should reevaluate Plaintiff's testimony and the third-party reports, reevaluate the RFC as appropriate, and proceed to steps four and five as needed.

Dated this 4th day of September, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 12